UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

JEFFREY M. HENRY,

              Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

             Defendant.
———————————————————————————

**REPORT AND
RECOMMENDATION**

10-CV-109
(LEK/VEB)

## I. INTRODUCTION

In January of 2007, Plaintiff Jeffrey M. Henry filed an application for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the
Social Security Act.  Plaintiff alleges that he has been unable to work since July of 2003,
due to physical and mental impairments.  The Commissioner of Social Security denied
Plaintiff's applications.

Plaintiff, by and through his attorney, Howard D. Olinsky, Esq., commenced this
action seeking judicial review of the Commissioner's denial of benefits pursuant to 42
U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this
case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §
636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On January 9, 2007, Plaintiff applied for DIB and SSI benefits, alleging that he had been unable to work since July 23, 2003. (T at 107-17).[1] The Commissioner initially denied the applications and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 21, 2009, in Syracuse, New York before ALJ Thomas P. Tielens. (T at 19). Plaintiff appeared with his attorney and testified. (T at 22-39).

On August 31, 2009, the ALJ issued a written decision denying Plaintiff's applications for benefits. (T at 8-18). The ALJ's decision became the Commissioner's final decision on December 11, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff commenced this action by filing a Complaint on January 29, 2010. (Docket No. 1). The Commissioner interposed an Answer on June 4, 2010. (Docket No. 5). Plaintiff filed a supporting Brief on August 24, 2010. (Docket No. 10). The Commissioner filed a Brief in opposition on December 2, 2010. (Docket No. 23).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, it is recommended that Plaintiff's motion be granted,

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 6).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

the Commissioner's motion be denied, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

3

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since July 23, 2003, the alleged onset of disability date. (T at 13).

The ALJ determined that Plaintiff had the following impairments considered "severe" under the applicable Social Security Act Regulations (the "Regulations"): status post surgeries for ileostomy and reversal; colectomy for familial polyposis; diabetes mellitus; degenerative disc disease; and depression. (T at 13).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 13).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the

residual functional capacity to perform the full range of light simple work. (T at 15).  The ALJ found that Plaintiff could not perform his past relevant work as a construction worker or carpenter.  (T at 17).

Considering Plaintiff's residual functional capacity (full range of light simple work), age (40 on the alleged onset date), education (high school), and work experience, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the national economy.  (T at 17).  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (July 23, 2003) through the date of the ALJ's decision (August 31, 2009) and denied the application for benefits. (T at 18).

As noted above, the ALJ's decision became the Commissioner's final decision on December 11, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

## 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  He offers six (6) principal arguments in support of his position.  First, Plaintiff contends that the ALJ made contradictory and inadequately supported findings concerning the severity of Plaintiff's back impairment.  Second, Plaintiff argues that his gastrointestinal condition met or medically equaled an impairment set forth in the Listings. Third, Plaintiff asserts that the ALJ failed to follow the treating physician's rule. Fourth, Plaintiff challenges the ALJ's residual functional capacity assessment.  Fifth, Plaintiff argues that the ALJ improperly assessed his credibility.  Sixth, Plaintiff contends that the ALJ should have consulted a vocational expert.  Each argument will be addressed in turn.

a.    **Evaluation of Back Impairment**

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ concluded that Plaintiff's degenerative disc disease was a

severe impairment. (T at 13).  However, in another section of the decision, the ALJ

thereafter described Plaintiff's back limitations as a "nonsevere impairment." (T at 17).

Plaintiff contends that his back impairment was undeniably a severe impairment, points

to this inconsistency, and argues that creates ambiguity that must be remedied by a

remand.

      The ALJ's use of the adjective "nonsevere" in connection with Plaintiff's back

impairment was certainly inartful.  However, the ALJ's overall rationale can be

ascertained from considering his decision as a whole, rather than focusing on one

particular phrase.  As noted above, the ALJ expressly found Plaintiff's degenerative disc

disease to be a severe impairment. (T at 13).  The ALJ found that Plaintiff retained the

residual functional capacity ("RFC") to perform light work, but concluded that he could

not perform his past relevant work as a construction worker and carpenter because the

demands of those jobs exceeded his RFC. (T at 16-17).

      The ALJ's reference to a "nonsevere impairment" was made in the context of his

decision to discount the assessment of Plaintiff's treating orthopedist, Dr. Richard

Zogby, and was not mean to suggest that Plaintiff's back impairment did not meet the

severity test set forth at step two of the sequential evaluation process.

      Dr. Zogby opined that Plaintiff's pain and other symptoms would frequently

interfere with  his ability to attend to and concentrate on simple work tasks. (T at 497).

He further indicated that Plaintiff could sit for 20 minutes at a time, stand for 10 minutes,

and stand/walk for less than 2 hours in an 8-hour workday. (T at 497-98).  Dr. Zogby

assessed that Plaintiff could sit for about 2 hours in an 8-hour workday. (T at 498).

According to Dr. Zogby, Plaintiff was limited to occasionally lifting/carrying 10 pounds,

but could never lift or carry more than that. (T at 498).  Dr. Zogby opined that Plaintiff

would miss about two days of work per month due to impairments or treatment. (T at

499).

The ALJ discounted Dr. Zogby's assessment, finding that it was inconsistent with

the doctor's own treating notes and Plaintiff's statements concerning his activities of

daily living. (T at 16-17).[4]  The ALJ's decision in this regard was supported by

substantial evidence.  Dr. Zogby had only treated Plaintiff for five months (T at 496) and

it appears the treatment constituted a single examination. (T at 471-74).  During that

examination, Dr. Zogby described Plaintiff as being in "moderate pain," with normal gait

and station. (T at 473).  Dr. Zogby noted marked reduction in range of motion, but the

seated straight leg raise test was negative. (T at 473).  Sensory and motor exams of the

right and left lower extremities were normal. (T at 473).

Further support for the ALJ's decision is provided by the assessment of Dr.

Kalyani Ganesh, who performed a consultative examination on February 26, 2007.  Dr.

Ganesh noted normal gait and stance and indicated that Plaintiff could rise from a chair

and get on and off the exam table without difficulty. (T at 382).  Dr. Ganesh found no

muscle atrophy, full range of motion, and no motor or sensory deficit on examination. (T

at 383).  Dr. Ganesh opined that Plaintiff had no limitations as to sitting, standing,

walking, or using his upper extremities. (T at 384).  He assessed a "moderate degree" of

limitation with regard to lifting, carrying, pushing, and pulling due to Plaintiff's multiple

---

[4]Here again, the ALJ's language is confusing.  He discounted Dr. Zogby's assessment because it
was "consistent with the doctor's treating notes." (T at 16).  In context, it is apparent the ALJ meant to say
"inconsistent."

abdominal surgeries. (T at 384).

Given the short treating history, Dr. Ganesh's opinion, and the inconsistency between Dr. Zogby's clinical notes and assessment, the ALJ acted within his discretion in discounting Dr. Zogby's assessment of Plaintiff's limitations.

Additional support for the ALJ's decision is found in the report of the non-examining State Agency review consultant.  The consultant reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift 10 pounds, and stand/walk/sit for about 6 hours in an 8-hour workday. (T at 404).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants  are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

As such, this Court finds that the ALJ properly determined that Plaintiff's degenerative disc disease was a severe impairment and that the ALJ's decision to

discount Dr. Zogby's assessment concerning the nature and extent of the limitations imposed by that impairment was supported by substantial evidence and in accord with applicable law.

### b.    Listings Analysis

As discussed above, if a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in

11

severity to all requirements, which findings must be supported by medically acceptable

clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal

physical findings "must be shown to persist on repeated examinations despite therapy."

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate

physical limitations based upon actual observations and/or clinical tests, rather than the

claimant's subjective complaints. Id.

        In the present case, Plaintiff had a total proctocolectomy (removal of his colon)

with ileal J-pouch and ileoanal anastomosis[5] in September of 2003. (T at 244-46).

Follow-up treatment and surgery to address related problems were required. (T at 293,

299, 304, 335, 350).  Plaintiff's treating physician, Dr. Ziegler, noted in September of

2004 that Plaintiff complained of recurrent diarrhea, but denied any abdominal pain,

nausea, vomiting, fever, or chills. (T at 342).  A note from January of 2005 indicated that

Plaintiff was experiencing approximately fourteen (14) episodes of diarrhea daily. (T at

353).  A May 2006 note dictated for Dr. Michael Moffa stated that Plaintiff was averaging

between six (6) and eight (8) bowel movements a day and was having acute right-sided

abdominal pain. (T at 363).  A treatment note shortly thereafter indicated that Plaintiff

was "feeling better." (T at 364).    Dr. Ziegler's treatment notes from June of 2006

indicated continued abdominal pain, which eventually led to a hernia diagnosis and

surgical repair. (T at 365-68).  In September of 2006, Dr. Ziegler described Plaintiff's

bowel function as "okay." (T at 368).  Plaintiff reported continued abdominal pain

---

        [5]Ileoanal anastomosis is a surgical procedure in which the large intestine is removed and the
lower portion of the small intestine is directly attached to the anal canal. _www.webmd.com_

following surgery. (T at 369).  Plaintiff's complaints of frequent bowel movements and fatigue were noted in an October 2006 treatment note. (T at 370).  Plaintiff sought treatment from Dr. Ziegler in June of 2008 for ongoing abdominal pain. (T at 425-27).

Treatment notes from the Familycare Medical Group between March of 2007 and January of 2009 indicate that Plaintiff consistently denied abdominal pain, constipation, diarrhea, nausea, or reflux. (T at 431, 435, 437, 439, 441, 445, 447, 449, 451).

The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled impairments identified in the Listings. (T at 13).  In the context of this analysis, the ALJ made specific reference to Listing § 1.04 (disorders of the spine), § 9.08 (diabetes mellitus), and § 12.04 (affective disorders). (T at 13-14).  The ALJ also discussed Plaintiff's gastrointestinal issues, finding that the treatment and surgical procedures used to address those issues "resulted in temporary limitations in activity but none were limiting for a total of twelve months individually or in combination." (T at 14).  The ALJ did not make specific reference to Listing § 5.06 (inflammatory bowel disease).

Plaintiff argues that the ALJ erred and that his gastrointestinal impairment meets or medically equals the impairment set forth in Listing § 5.06. 20 CFR Part 404, Subpart P, Appendix 1.  For the following reasons, this Court finds Plaintiff's argument unpersuasive.

Listing § 5.06 may be satisfied if the claimant demonstrates criteria consistent with either of its two subparts. Subpart A requires a showing of:

> Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery,

13

requiring hospitalization for intestinal decompression or for
surgery, and occurring on at least two occasions at least 60
days apart within a consecutive 6-month period.

Plaintiff was twice admitted to the hospital for small bowel obstructions, but these were

resolved with conservative care and surgery was not required. (T at 288, 291, 324,

327).  A CT scan and x-ray of Plaintiff's abdomen in June of 2008 indicated that

Plaintiff's bowel was essentially unremarkable. (T at 426-27, 475).  As such, Plaintiff

had not made a showing sufficient to satisfy Subpart A of § 5.06.

Subpart B of § 5.06 may be satisfied if the claimant shows two of the following

"despite continuing treatment as prescribed and occurring within the same consecutive

6-month period:"

1. Anemia with hemoglobin of less than 10.0 g/dL, present
on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0 g/dL or less, present on at least two
evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on
physical examination with abdominal pain or cramping that is
not completely controlled by prescribed narcotic medication,
present on at least two evaluations at least 60 days apart; or

4. Perineal disease with a draining abscess or fistula, with
pain that is not completely controlled by prescribed narcotic
medication, present on at least two evaluations at least 60
days apart; or

5. Involuntary weight loss of at least 10 percent from
baseline, as computed in pounds, kilograms, or BMI, present
on at least two evaluations at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a
gastrostomy or daily parenteral nutrition via a central venous
catheter.

Plaintiff's hemoglobin level consistently exceeded the level necessary to satisfy

Subpart B (i.e. less than 10.0 g/dL). (T at 299 - 15.2; 318 - 12.1; 320 - 11.1; 322-11.6; 330 - 14.8; 460 - 16.5).  Plaintiff's serum albumin level also was greater than 3.0 (the listing level). (T at 284 - 4.8; 461 - 4.2; 488 - 4.6).

While the record certainly documents complaints of abdominal pain (T at 350, 354-55, 360, 363-65, 365-66, 449, 490), Plaintiff's abdomen was consistently described as soft and non-tender. (T at 267, 271, 296, 342, 348, 354, 357-58, 360, 431).  In addition, as noted above, between March of 2007 and January of 2009 Plaintiff consistently denied abdominal pain, constipation, diarrhea, nausea, or reflux. (T at 431, 435, 437, 439, 441, 445, 447, 449, 451).

There is no evidence in the record suggesting that Plaintiff suffered from perineal disease with a draining abscess or fistula, with pain not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart.  Likewise, there is no evidence that Plaintiff experienced involuntary weight loss sufficient to satisfy Subpart B. Lastly, there is no indication that Plaintiff needed supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Accordingly, this Court finds that Plaintiff did not meet his burden of showing that the requirements of  Subparts A or B of Listing § 5.06 were satisfied.  As such, there was no reversible error with respect to the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal an impairment set forth in the Listings.  Plaintiff's suggestion that the ALJ was obligated to re-contact Dr. Ziegler to determine whether Plaintiff's condition satisfied the Listing is without merit.  An ALJ is not required to obtain more information from the treating physician where, as here, the medical record

15

provides a sufficient basis on which to conclude that the claimant is not disabled. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999).

### c.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

Dr. Erika Lambert, a treating physician, opined that Plaintiff's pain would constantly interfere with the attention and concentration he would need to perform

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

simple work tasks. (T at 491).  Dr. Lambert indicated that Plaintiff could sit, stand, or walk for about 2 hours in an 8-hour work day, would need to shift positions at will, and would sometimes need to take unscheduled breaks during an 8-hour workday. (T at 492).  Dr. Lambert found that Plaintiff could occasionally lift less than 10 pounds, rarely lift less than 20 pounds, and could never lift more than that. (T at 492).  She concluded that Plaintiff could need to be absent from work as a result of his impairments and treatment more than 4 days per month. (T at 493).

Dr. Lambert indicated that Plaintiff would frequently need  unscheduled restroom breaks with minimal advance notice and might experience accidents if not permitted to immediately access a restroom. (T at 495).

The ALJ did not afford controlling weight to Dr. Lambert's assessment, finding that it was contradicted by the doctor's treatment notes. (T at 16).  As noted above, Plaintiff consistently denied abdominal pain, constipation, diarrhea, nausea, or reflux. (T at 431, 435, 437, 439, 441, 445, 447, 449, 451).  Plaintiff also generally denied pain and was described as healthy, cooperative, and well-developed, with no physical limitations noted. (T at 431, 433, 435, 437, 439, 445, 447, 449-52, 481).

Nevertheless, this Court finds that the ALJ should have re-contacted Dr. Lambert before discounting her opinion.  During his testimony, Plaintiff stated that he experienced 12 to 14 bowel movements per day, which he described as "always liquid" and "just *like* diarrhea." (T at 28)(emphasis added).  Plaintiff testified that he must be constantly mindful of the location of bathrooms and has soiled himself on "numerous" occasions. (T at 35-36).  Dr. Ganesh, the consultative examiner, noted that Plaintiff "complained of frequent loose bowel movements." (T at 381).  Plaintiff made similar

17

complaints to Dr. Shapiro, the psychiatric consultative examiner.  (T at 376).

This Court finds it at least plausible that Plaintiff did not consider his frequent bowel movements to be "diarrhea," thus explaining the fact that he did not complain of diarrhea during his office visits.  In other words, Plaintiff might not have reported diarrhea to his primary care physician because he considered his frequent bowel movements a chronic and essentially untreatable condition (an aftereffect of his total proctocolectomy), as opposed to a transient condition like diarrhea.  In any event, given the severity of the alleged symptoms and the impact such symptoms would likely have on Plaintiff's ability to maintain competitive, renumerative employment, there is sufficient ambiguity in the record to warrant remand for further development and clarification.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

In this case, as noted above, Dr. Lambert's opinion concerning Plaintiff's frequent, sudden need to use the restroom was a significant issue.  Because the

18

opinion was not necessarily inconsistent with the treatment notes, the ALJ's failure to
re-contact requires remand.

Plaintiff also contends that the ALJ should have afforded controlling weight to the
assessment provided by Dr. Zogby with respect to his back impairment.  As noted
above, Dr. Zogby indicated that Plaintiff was limited to sitting for 20 minutes at a time,
standing for 10 minutes, and standing/walking for less than 2 hours in an 8-hour
workday. (T at 497-98).  Dr. Zogby assessed that Plaintiff could sit for about 2 hours in
an 8-hour workday. (T at 498).  According to Dr. Zogby, Plaintiff was limited to
occasionally lifting/carrying 10 pounds, but could never lift or carry more than that. (T at
498).  Dr. Zogby opined that Plaintiff would miss about two days of work per month due
to impairments or treatment. (T at 499).

For the reasons outlined above, this Court finds that the ALJ's decision to
discount Dr. Zogby's assessment was supported by substantial evidence.  In sum, Dr.
Zogby did not have a lengthy treating relationship with Plaintiff, his clinical notes
contradicted his assessment, and his opinion was inconsistent with the findings of the
consultative examiner and State Agency review consultant.

Plaintiff contends the ALJ should have re-contacted Dr. Zogby to explain the
inconsistencies between his assessment and his  treating notes.  However, the ALJ
appropriately determined that Dr. Zogby's opinion was contradicted by substantial
evidence in the record (including the assessments of the consultative examiner and
State Agency review consultant) and was therefore not entitled to controlling weight.
This was in accordance with applicable law. See Balsamo v. Chater, 142 F.3d 75, 81
(2d Cir.1998); McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d

Cir.1983)) ("[A]n ALJ is free ... to choose between properly submitted medical opinions."). The ALJ's role in weighing the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his [or her] opinion to the evidence." Rebull v. Massanari, 240 F.Supp.2d 265, 273 (S.D.N.Y.2002).

Accordingly, this Court finds it was not necessary for the ALJ to re-contact Dr. Zogby to further develop or clarify his opinions.  However, as discussed above, the ALJ should have re-contacted Dr. Lambert.  The ALJ's reliance on the apparent inconsistency between Dr. Lambert's treatment notes and opinion was not adequately grounded.  Moreover, unlike the opinion rendered by Dr. Zogby, Dr. Lambert's assessment concerning Plaintiff's frequent and sudden need to use the restroom was not contradicted by the consultative examiner, who made no finding on that question. Accordingly, a remand is recommended to permit the ALJ to further develop the record concerning Dr. Lambert's assessment.

### d.  Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

20

claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to perform the full range of simple light work as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b).  Plaintiff challenges this assessment on several grounds.  First, Plaintiff contends that the ALJ erred by failing to provide a "function-by-function" assessment of Plaintiff's limitations. Under the applicable Regulations, the ALJ must first identify the individual's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Specifically, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). After that analysis is completed, the ALJ may express the claimant's RFC in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

In this case, contrary to Plaintiff's argument, the ALJ did provide a function-by-function assessment.  To wit, the ALJ concluded that Plaintiff could lift/carry up to 20 pounds, frequently lift/carry 10 pounds, stand/walk for 6 hours in an 8-hour workday,

and sit for up to 2 hours in an 8-hour workday. (T at 16).  As such, this Court finds no error with regard to this aspect of the ALJ's decision.

Plaintiff also contends that the ALJ gave too much weight to the assessment of the non-examining State Agency review consultant.  There is some reason to believe the ALJ incorrectly thought the review consultant was a physician. (T at 16).  In addition, "the opinion of a non-examining [consultant], without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override a treating physician's assessment. Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998).  However, the consultant's assessment was only one piece of a large body of evidence cited by the ALJ to support his RFC assessment.  As outlined above, extensive treatment notes generally indicated a lack of severe pain and other limiting symptoms and the consultative examiner found no limitations as to sitting, standing, walking, or using his upper extremities. (T at 384).  This evidence, along with the State Agency review consultant's assessment, amounted to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Plaintiff further challenges the ALJ's conclusion that Plaintiff's need to use the restroom could be accommodated within the context of customary workplace arrangements and breaks. (T at 17).  Plaintiff's argument is based primarily upon his own testimony and the assessment of Dr. Lambert.  For the reasons outlined above, this Court finds Plaintiff's argument persuasive.  The ALJ's primary rationale for discounting Dr. Lambert's assessment and Plaintiff's testimony concerning his frequent, sudden urge to use the restroom was the fact that treatment notes indicated that

22

Plaintiff consistently denied gastrointestinal complaints. (T at 16).  However, as discussed above, there is reason to believe the treatment notes might not have accurately reflected Plaintiff's actual symptoms.  A remand for further development of the record is therefore required.

Plaintiff also asserts that the ALJ did not properly assess his psychiatric impairment.  When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal of the listed impairments.  If the impairments do

23

meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

In this case, the ALJ found that Plaintiff suffers from depression, which is a medically determinable impairment. (T at 13).  The ALJ concluded that Plaintiff had a mild restriction with respect to activities of daily living, moderate difficulties with regard to social functioning, mild limitations with respect to maintaining concentration, persistence, or pace; and no episodes of decompensation. (T at 14).  As such, the ALJ found that Plaintiff's depression was a "severe" impairment, but concluded that it did not meet or medically equal one of the impairments set forth in the Listings. (T at 14).  The ALJ further determined that Plaintiff retained the mental RFC to perform the full range of light simple work. (T at 15).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A *substantial* loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.  (emphasis added).

Plaintiff has no history of outpatient psychiatric treatment. (T at 376). Dr. Shapiro, the psychiatric consultative examiner, opined that Plaintiff appeared to be capable of understanding and following simple instructions and directions.  She further found that "[b]arring any medical contraindications," Plaintiff appeared to retain the ability to perform simple and complex tasks with supervision and independently. (T at 379).  Dr.

Shapiro noted that Plaintiff appeared to have difficultly maintaining attention and concentration when distracted by pain.  She indicated that Plaintiff might find it difficult to regularly attend to a schedule because of fear of leaving home due to his medical problems. (T at 379).  Dr. Shapiro opined that Plaintiff could learn new tasks, make appropriate decisions, and deal with "some stress," but might "find it difficult at times to consistently relate to and interact appropriately with others." (T at 379).

The non-examining State Agency review consultant concluded that Plaintiff could understand and follow simple job instructions with adequate attention and concentration. (T at 401).  The consultant further opined that Plaintiff could deal with changes in a routine, low level work setting and relate adequately with supervisors and co-workers.  The consultant found that Plaintiff could make simple, work-related decisions and maintained the capacity to perform simple, unskilled work. (T at 401).

Given the absence of psychiatric treatment and the findings of the consultative examiner and State Agency review consultant, this Court finds that the ALJ's conclusion that Plaintiff retained the mental RFC to perform the basic mental demands of simple, unskilled work was adequately supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### e.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting

the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

26

1.     [Plaintiff's] daily activities;
2.     The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.     Precipitating and aggravating factors;
4.     The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.     Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.     Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.     Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 16).

This Court finds that the credibility assessment will need to be revisited on remand following further development of the record.  Plaintiff testified that he experienced 12 to 14 bowel movements per day, which he described as "always liquid." (T at 28).  Plaintiff must be constantly aware of where the restrooms are located and has soiled himself on "numerous" occasions (T at 28, 35-36).  Plaintiff's testimony

27

concerning the nature and extent of this limitation was supported by Dr. Lambert, a treating physician. (T at 495).  As outlined above, the ALJ's rationale for discounting Dr. Lambert's opinion and Plaintiff's testimony was not supported by substantial evidence. The ALJ was obliged to re-contact Dr. Lambert to address the arguable inconsistency between her assessment of Plaintiff's gastrointestinal issues and treatment notes in which Plaintiff denied diarrhea.  Accordingly, the question of Plaintiff's credibility should be revisited on remand.

### f.    Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996):

 In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the

28

claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rule 202.21. (T at 18).  This finding must be revisited on remand.

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine

29

whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

As discussed in detail above, the record contained evidence, including an opinion from a treating physician, to the effect that Plaintiff experienced frequent, sudden urges to use the restroom.  Such an impairment might significant diminish Plaintiff's work capacity beyond that caused by his exertional limitations.  Thus, consultation with a vocational expert may be required on remand.

### 3.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's
Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment
on the Pleadings be GRANTED, and that this case be remanded for further
administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 22, 2012

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &
Recommendation be filed with the Clerk of the Court and that the Clerk shall send a
copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report
& Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and
72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION
WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO
FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER
BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED
HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d
566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28
U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure,
and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to
consider arguments, case law and/or evidentiary material *which could have been, but
were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch
Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir.
1988).

Dated:   March 22, 2012

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge